In the Matter of Philip J. LA
FATA, M.D., Debtor.

Bankruptcy No. 83–00475–BE.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Sept. 7, 1984.

Richard F. Fellrath, Stern, Milmet, Vecchio, Goll & Carnago, P.C., Detroit, Mich., for trustee.

Ellen M. Tallerico, Frank & Stefani, Troy, Mich., for Grace Weber.

Alan P. Goldstein, Southfield, Mich., for debtor.

## MEMORANDUM OPINION AND ORDER

STANLEY B. BERNSTEIN, Bankruptcy Judge.

### Facts

This debtor, a physician and surgeon, formed a professional corporation in 1969. In 1970, he established a profit sharing retirement trust and a pension trust and plan; both of these trust agreements were amended in 1977 to conform to the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 26 U.S.C. § 401. The debtor was the plan administrator and trustee of these plans.

The debtor allowed his medical malpractice insurance to lapse sometime during 1979; he has had three malpractice actions commenced against him since he ceased to be insured: *Weber v. LaFata,* filed February, 1980 and served on March 31, 1980; *Hyatt v. LaFata,* filed October, 1981 and served on June 19, 1980; and *Werner v. LaFata,* served on June 19, 1980. Only the *Werner* proceeding is covered to any extent by malpractice insurance.

Dr. LaFata filed a Chapter 7 petition on February 2, 1983. Except for some relatively small household and tax debts, the majority of indebtedness disclosed in the petition arises from the malpractice claims.

The debtor elected the state exemptions under 11 U.S.C. § 522(b)(2)(B), and included as exempt all equity in his home and in his pension plan. At the time of the petition the debtor had deposited $123,901 in his pension plan and $148,387 in the profit sharing plan; thus, $272,288 were on deposit in Internal Revenue Service qualified ERISA plans. The trustee moved to compromise his objection to the exemption of these funds for $10,000. The present dispute arises from the objections of tort claimant Grace Weber to that proposed compromise.

### Analysis

The Bankruptcy Code seeks to strike a balance between the need to convert the debtor's estate into cash for orderly distribution among the creditors and the need to provide the debtor with a fresh start. Various sections of this statutory scheme aimed at striking a balance between those conflicting interests must be reviewed to achieve a resolution here.

The funds deposited under the ERISA plans became property of the estate upon the filing of the bankruptcy petition. 11 U.S.C. § 541. ERISA plans are not excluded property as defined in § 541(c)(2); that exclusion clearly refers to spendthrift trusts as defined by state law. *See Samore v. Graham (In re Graham)*, 726 F.2d. 1268 (8th Cir.1984); *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir.1983).

*Goff* also stands for the proposition that if the debtor makes an election under 11 U.S.C. § 522(b), the "state" exemption, he can not exempt any of his self-settled pension and profit sharing plans. All those funds must be turned over immediately to the trustee for distribution to creditors of the estate holding allowable claims. In this instance the consequence may appear personally disastrous for the debtor's retirement goals, but from the perspective of the creditors who were injured by the debtor's alleged acts of malpractice that is only just.

The premise to the *Goff* analysis is that under 11 U.S.C. § 522(b)(2)(A) Congress chose not to permit exemptions for ERISA-funds. This subsection covers exemptions under federal non-bankruptcy law and state or local law. (The exemption under federal bankruptcy law is § 522(d).) The *Goff* court concluded that Congress in its statements of legislative intent did not include ERISA in its detailed list of federal non-bankruptcy entitlement statutes. Buttressing that observation is Congress' complete awareness of ERISA under the federal exemption scheme under 11 U.S.C. § 522(d)(10)(E). Under § 522(d)(10) the amount in an ERISA plan reasonably necessary for the support of the debtor and his dependents can be exempted.

I believe that the construction of the *Goff* court is rather strained, but after two courts of appeal have adopted that line of analysis, it is imprudent to rule upon another theory. Nevertheless, I do believe it is appropriate to outline a different and, in my judgment, a more equitable approach. It remains the responsibility of Congress to resolve the ambiguity in § 522(b)(2)(A) concerning ERISA plans by adopting amendatory legislation.

The appellate courts have relied heavily upon Congress' failure to specify ERISA plans as falling within property exempt under federal law. Too much reliance has been placed upon that congressional silence. An "all or nothing" approach ignores the balancing approach established by the Code. To adopt such a construction means that a debtor who establishes a self-settled ERISA plan and claims the state exemption is in jeopardy of losing all those funds to the estate. Only a debtor who is an employee covered by a qualified ERISA plan managed by independent trustees may protect his investment because such a plan would normally qualify as a spendthrift trust within the meaning of § 541(c)(2). A debtor who elects the federal exemptions under § 522(d) may exempt contributions to the extent allowed under § 522(d)(10)(D).

If Congress had intended such a deliberate, narrow exemption to its general policy of allowing a debtor to provide for his

retirement, that exception should be clearly expressed, and not one left to be implied from Congress' silence. Moreover, such a construction frustrates the legislative intent to provide debtors with a fresh start in many cases.

In this case, the debtor is approximately 62 years old. If Dr. LaFata is required to submit all of his contributions to the trustee for distribution to creditors, it appears likely that he will have no assets upon which to rely for his retirement beyond monthly Social Security payments. Is it doubtful that the Code intended to place retired physicians in a worse financial position than it does retired assembly workers from General Motors.

■ As a general proposition, this Court believes that the congressional balance struck by § 522(d)(10)(D) ought to be applied to § 522(b) elections. If a debtor claims an exemption of contributions made to qualified pension and profit sharing plans, he should be entitled to an evidentiary hearing to determine the amount of the contribution reasonably necessary for the support of the debtor and the debtor's dependents. A debtor's right to reasonably necessary retirement benefits should not hinge on electing under § 522(d) rather than under § 522(b). To condition that right upon the exemption scheme elected subordinates ERISA to the Bankruptcy Code in a mindless and mechanical manner.

■ I would, however, add a very important limitation to exemptions of ERISA funds. Here, the debtor was a practicing physician who elected to allow his medical malpractice insurance to lapse and essentially become self-insured. To the extent that the debtor continued to make contributions to his profit sharing after he consciously assumed the risk for any possible malpractice claims, it would be grossly unjust to allow him to shield from those claimants all of his largest asset—his contributions to his ERISA plans. That result would excuse what is essentially a fraudulent transfer. The debtor could defraud patients who have suffered an injury as a result of the debtor's malpractice by insuring that there are no funds available for distribution to creditors. *See, e.g.,* 11 U.S.C. § 548(a). Thus, to the extent that Dr. LaFata continued to make contributions, either voluntarily or involuntarily, to either the pension plan or the profit sharing plan after he had notice of any malpractice claim against him, such contributions should be presumed to be in the nature of a fraudulent transfer; that presumption should be rebuttable upon a showing of clear and convincing evidence.

Although this approach may seem a dramatic departure from that taken by other courts faced with this dilemma, it is the only solution I see which attempts to reconcile the competing interests of debtors and creditors recognized by the Code and avoids unfair disparate treatment of debtors in differing employment situations. As noted above, I will not impose this solution upon the unresponsive language of the Code. Dr. LaFata should be permitted to consider amending his exemptions to federal law, provided that the trustee, trustee's counsel and the objecting creditor's counsel are first paid for the reasonable costs and fees they have incurred.

IT IS ORDERED that:

1) The trustee's motion to compromise is denied.[1]

2) The debtor shall have ten (10) days from the entry of this order to amend his exemptions.

3) If the debtor does not amend his exemptions within ten (10) days of this order, the debtor shall immediately thereafter turn over all of the funds on deposit under

1. This Court is disturbed by the trustee's conduct in this case, and that of his appointed counsel. 11 U.S.C. § 704 imposes numerous duties upon the trustee which are clearly intended to require the trustee to scrutinize the financial dealings of the debtor carefully. It appears to this Court that these duties were exercised minimally at best in this case; the trustee moved to compromise this dispute over $250,-000 in ERISA plan contributions for a mere $10,000—even though those funds are the only major asset of this estate, and reported appellate opinions supported an objection of the entire exemption.

both his pension and profit sharing plans to the trustee for further disposition.

IT IS SO ORDERED.