762 F.2d 1204
 53 USLW 2614, 12 Collier Bankr.Cas.2d 1431,
13 Bankr.Ct.Dec. 367, Bankr. L. Rep. P 70,578,
7 Employee Benefits Ca 1440
 Harry Lee McLEAN; W. Keenan Stephenson, Jr., Appellees,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Appellant.
United States, Amicus Curiae.
In re Harry Lee McLEAN, Debtor.
Harry Lee McLEAN; W. Keenan Stephenson, Jr., Appellees,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Appellant.
In re Harry Lee McLEAN, Debtor.
 Nos. 84-1707, 84-2017.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1985.
Decided May 24, 1985.
 
 Francis J. Carey, Pittsburgh, Pa. (Michele L. Tate, Chicago, Ill., Carlton B. Bagby, Columbia, S.C., on brief), for appellant.
 Sue C. Erwin, Columbia, S.C. (Boyd, Knowlton, Tate & Finlay, Anne McLain Johnson, Palmetto Legal Services, Columbia, S.C., on brief), for appellees.
 Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Michael J. Roach, Tax Div., Dept. of Justice, Washington, D.C., Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief, for amicus curiae.
 Before PHILLIPS and WILKINSON, Circuit Judges, and KISER,* District Judge.
 JAMES DICKSON PHILLIPS, Circuit Judge.
 
 
 1
 In this Chapter 13 bankruptcy proceeding, Central States Pension Funds (Central) appeals the district court judgment, 41 BR 893, upholding the bankruptcy court's order that Central pay pension funds due the debtor, Harry McLean, directly to the trustee of McLean's Chapter 13 plan. Central also appeals a contempt order entered against it by the district court. We reverse both the judgment upholding the pay order and the order holding Central in contempt.
 
 
 2
 * Harry McLean filed a Chapter 13 plan and sought to fund the plan in part with portions of pension payments that accrue to him on a monthly basis on account of his interest in an ERISA qualified fund administered by Central. McLean's trustee in bankruptcy sought in the bankruptcy court a pay order pursuant to 11 U.S.C. Sec. 1325(b) requiring Central to pay directly to the trustee that portion of the monthly pension payments due McLean that were designated to fund the Chapter 13 plan. Central opposed issuance of the pay order on the basis that it would require Central to violate an anti-assignment provision of the fund's trust agreement forbidding alienation of benefits by the beneficiaries of the fund.
 
 
 3
 The anti-assignment provision was required to be included in the trust agreement in order for Central to qualify as an ERISA fund. See 29 U.S.C. Sec. 1056(d)(1). In addition, the anti-assignment provision was required to maintain Central's tax exempt status under 26 U.S.C. Sec. 501(a) pursuant to which Central had to meet the qualifications of a 26 U.S.C. Sec. 401(a) qualified trust, including a requirement that the fund include an anti-assignment provision. See 26 U.S.C. Sec. 401(a)(13). Central contended, therefore, that if it violated the statutorily mandated anti-assignment provision by paying funds directly to the trustee, it might lose both its ERISA qualification and its tax exempt status, a position supported on this appeal by the Commissioner of Internal Revenue as amicus. In the face of these objections by Central, the bankruptcy court nevertheless issued the pay order as requested by the trustee. When this was upheld by the district court, Central noted this appeal.
 
 II
 
 4
 The dispositive issue is whether McLean's interest in the trust fund is bankruptcy estate property, hence subject to a pay order. The Trustee contends that it is; Central, that it is not. We agree with Central.
 
 
 5
 We construe the relevant statutory provisions as follows. The Bankruptcy Code, 11 U.S.C. Sec. 541(a)(1), now broadly brings within the definition of estate property all legal or equitable interests of the debtor in property except for interests defined in Secs. 541(b) and 541(c)(2). See Bezanson v. Maine National Bank (In re Kwaak), 42 B.R. 599, 601 (Bankr.D.Me.1984). Section 541(c)(2) provides that a restriction on the transfer of a beneficial interest in a trust enforceable under applicable non-bankruptcy law is enforceable in bankruptcy. Therefore, interests of the debtor subject to such enforceable transfer restrictions are not estate property. See id.
 
 
 6
 The estate property definition of Sec. 541 is adopted for Chapter 13 plans by 11 U.S.C. Sec. 1306(a), which for purposes of Chapter 13 proceedings also draws into the definition of estate property after-acquired property of the debtor that would qualify under Sec. 541 as estate property. Hence, a pensioner's interest in a trust fund that in the hands of the fund trustee is subject to an enforceable transfer restriction and is therefore not in that form Sec. 541 estate property, may become estate property in a Chapter 13 plan once paid to the debtor under terms of the trust.
 
 
 7
 Under this construction of the relevant statutory provisions, the only remaining question is whether the restriction on transfer in the Central trust agreement is enforceable under Illinois law, which governs the fund. If it is, the restriction is also enforceable in bankruptcy under Sec. 541(c)(2), and McLean's pre-distribution interest in the fund is excluded from estate property by operation of Sec. 541(c)(2) as adopted for Chapter 13 proceedings by Sec. 1306.
 
 
 8
 On this point, it is clear that the anti-assignment provision of the Central trust agreement would be enforceable under governing Illinois law as a valid restriction on transfer. Illinois courts have long recognized the enforceability of spendthrift trusts, holding that their protection might run to both income and corpus. See Von Kesler v. Scully, 267 Ill.App. 495, 505 (1932). More recently, the Illinois courts have recognized that the spendthrift provisions of ERISA-qualified funds may be enforceable under Illinois spendthrift trust law. See Peoples Finance Co. v. Saffold, 83 Ill.App.3d 120, 38 Ill.Dec. 534, 403 N.E.2d 765, 767-68 (Ill.1980); Christ Hospital v. Greenwals, 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700, 702-04 (Ill.1980).
 
 
 9
 The Central trust agreement's anti-assignment provision is indistinguishable in critical respect from spendthrift provisions held enforceable by the Illinois courts.[1] Moreover, the Central pension fund is not one of those which because settled and revocable by a beneficiary, may not on that account for public policy reasons be protected against the claims of the beneficiary's creditors by anti-assignment provisions. See Johnson v. Fenslage (In re Johnson), 724 F.2d 1138, 1140-41 (5th Cir.1984); Kwaak, 42 B.R. at 602. Contributions to the Central Fund are made only by employers and the employees have no power to revoke the trust and reach its corpus. Public policy concerns would not therefore prevent enforcement of this restriction under controlling nonbankruptcy state law.
 
 III
 
 10
 Against this construction of the relevant statutory provisions, the trustee in bankruptcy advances a number of contentions leading to the opposite conclusion that McLean's interest in the trust fund is estate property subject to the pay order. We consider these in order and find none persuasive.
 
 A.
 
 11
 First, the trustee urges that because pension interests are made expressly subject to exemptions by a bankrupt under 11 U.S.C. Sec. 522(d)(10)(E), they must of necessity be estate property under Sec. 541(a)(1); and that this interpretation is made even more compelling by Congress' clear intention to make Chapter 13 proceedings available to pensioners.
 
 
 12
 Though two circuits have apparently accepted this argument, see Samore v. Graham (In re Graham), 726 F.2d 1268, 1272-73 (8th Cir.1984); Regan v. Ross, 691 F.2d 81, 86 (2d Cir.1982), we do not because, with all respect, we think its essential premise is flawed. The fact that pension interests are in general made subject to exemption from bankruptcy estate property does not mean that some may not be included in estate property at all. We are more persuaded by, and adopt, the Fifth Circuit's approach in Goff v. Taylor (In re Goff), 706 F.2d 574, 586-89 (5th Cir.1983), and that of the bankruptcy court in Kwaak, 42 B.R. at 601-02. With those courts, we believe that whether a particular pension fund interest subject to transfer restrictions is initially included in estate property is wholly determined by whether, per Sec. 541(c)(2), the restriction is enforceable under applicable nonbankruptcy law, including any public policy concerns that might make unenforceable a restriction in a pension plan settled and revocable by a beneficiary. See, e.g., Goff, 706 F.2d at 588.
 
 
 13
 This interpretation in no way undercuts the exemption provisions of Sec. 522(d)(10)(E). As the Goff court pointed out, Sec. 522(d)(10)(E) makes a broad array of employment benefits, including those embodied in certain qualified and unqualified pension plans, subject to exemption. Id. at 587. Section 541(c)(2) is simply a more narrowly focussed provision that excludes from estate property some, but not all, of the employment benefits which, if included in estate property, might then be subject to exemption by the debtor under Sec. 522(d)(10)(E). This construction, we believe, harmonizes the two sections while that urged by the trustee would effectively read out Sec. 541(c)(2) in unwarranted deference to a misperceived conflict with Sec. 522(d)(10)(E).[2]
 
 
 14
 Neither do we find persuasive the trustee's related contention that a construction that excludes this pension interest from estate property, hence from the reach of a direct pay order, undercuts Congress' expressed intention to make Chapter 13 proceedings available to pensioners. See H.R.Rep. No., 595, 95th Cong., 2d Sess. 312, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6269.
 
 
 15
 In the first place, pension benefits not subject to enforceable restrictions, hence to exclusions from estate property under Sec. 541(c)(2), are of course directly available--by pay order if necessary--to fund pensioners' Chapter 13 plans. And, as earlier indicated, a modest bit of creativity can make Sec. 541(c)(2)--excluded pension fund interests available--as after-acquired estate property under Sec. 1306(a)--for funding such plans. See, e.g., In re Hammonds, 23 B.R. 674, 675-77 (Bankr.M.D.Ga.1982) (pay order directing delivery to bankruptcy trustee of checks payable to pensioner-debtor in amounts required to fund Chapter 13 plan).[3]
 
 
 16
 We therefore do not accept the trustee's contention that construing Sec. 541(c)(2) to exclude from estate property pension interests subject to transfer restrictions flies in the face of Congress' intention that pensioners should be able to use Chapter 13 proceedings.
 
 B.
 
 17
 The trustee next contends that the anti-assignment requirements respecting pension fund interests imposed by ERISA, 29 U.S.C. Sec. 1056(d)(1), and the Internal Revenue Code, 26 U.S.C. Sec. 401(a)(13), have been repealed sub silento by Congress' later enactment of the Bankruptcy Reform Act. Specifically the trustee urges that there are irreconcilable conflicts between the ERISA and IRC anti-assignment requirements on the one hand, and the expanded definition of estate property under Sec. 541(a)(1), the exemption provisions of Sec. 522(d)(10)(E), and the pay order authority of Sec. 1325(b) of the later-enacted Bankruptcy Reform Act on the other. These irreconcilable conflicts, it is contended, require us to conclude that Congress has repealed by implication the ERISA and IRC requirements under the test of Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (repeal by implication may be found in two instances: irreconcilable conflict between provisions of earlier and later enactments; clearly intended complete supersession by later enactment of subject matter of earlier).
 
 
 18
 Judicial determinations of repeals by implication are for obvious reasons disfavored, see Buren v. Social Security Administration, 725 F.2d 1080, 1085 (6th Cir.1984), and we do not find repeal here. Essentially, for reasons already largely explored, we find no such irreconcilable conflicts as would justify a finding of repeal under the Radzanower analysis.
 
 
 19
 The expansion of the definition of estate property in Sec. 541(a) of the Bankruptcy Reform Act essentially involved abandonment of the former concept that estate property included all items not subject to exemption. Under this definitional approach, as earlier indicated, we see no logical conflict between a definition of estate property that includes everything, Sec. 541(a), except items specifically excluded, e.g., Sec. 541(c)(2), and that then makes some included items nevertheless subject to exemption by the debtor, e.g., Sec. 522(d)(10)(E). There is therefore, under our construction, no irreconcilable conflict between the earlier enacted ERISA and IRC requirements of property transfer restrictions and a later enacted Bankruptcy Reform Act definition of estate property that expressly excludes property subject to such a restriction from the general definition of estate property. Neither is there any irreconcilable conflict between the effect of the ERISA and IRC-required restrictions of excluding some pension interests from estate property, and later enacted provisions of the Bankruptcy Reform Act that include other pension interests in estate property subject to debtor exemption. Cf. Buren, 725 F.2d at 1085-87 (no repeal by implication of anti-assignment provisions of Social Security Act by later-enacted Bankruptcy Reform Act provisions making social security payments subject to exemption under Sec. 522(d)(10)(A) or (C)).
 
 
 20
 Finally, we find no irreconcilable conflict between the effects of anti-assignment provisions of ERISA and the IRC in excluding pension interests from estate property under Sec. 541(c)(2), and the authority conferred by Sec. 1325(b) of the Bankruptcy Reform Act to issue pay orders affecting future income of debtors. Section 1322(a)(1) does provide that a bankruptcy plan shall provide for the submission of all necessary future income of the debtor to the control of the trustee, and Sec. 1325(b) does give the bankruptcy court the power to order any entity from whom the debtor receives income to pay it to the trustee.
 
 
 21
 Read literally and in isolation, as the trustee contends they should be, these provisions could be construed to conflict with anti-assignment provisions in ERISA and the IRC. But this would be a wooden reading to create a conflict that does not actually exist under a proper construction. Under that construction, Secs. 1322(a)(1) and 1325(b) are simply administrative provisions limited in their scope by the substantive limitation imposed by Sec. 541(c)(2) on interests includable in estate property. Section 1325(b) simply provides a means for bringing estate property realizable as future income of the debtor directly into the trustee's control, but it does not purport to define the scope of estate property. That is done for the property interests here in question by the provisions of Sec. 541(c)(2). But see Regan, 691 F.2d at 84-85.
 
 IV
 
 22
 We turn now to Central's appeal from the order holding it in civil contempt.
 
 
 23
 After the district court upheld the bankruptcy court's pay order, Central did not seek a stay of the order. Nevertheless, Central paid the full amount of McLean's pension payment due for the following month to McLean in contravention of the pay order. Although the trustee was not deprived of funds by Central's noncompliance, the district court held Central in civil contempt and ordered it to pay damages to the trustee to compensate for attorney fees. Central contends that reversal of the contempt order is warranted because it acted in good faith and because the pay order is invalid.
 
 
 24
 Orders of the courts must be promptly complied with, absent a stay, for appeal is the remedy for decisions believed to be erroneous. Maness v. Meyers, 419 U.S. 449, 458-59, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975). Hence, good faith alone does not immunize a party from a civil contempt sanction for non-compliance with a court order. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).
 
 
 25
 Nevertheless, Central is entitled to reversal of the contempt order because it has prevailed in overturning the pay order on appeal. Although a criminal contempt sanction stands even if the underlying order is reversed, reversal of the underlying order ordinarily invalidates any civil contempt sanctions predicated thereon. See ITT Community Development Corp. v. Barton, 569 F.2d 1351, 1356 (5th Cir.1978) (citing cases). We hold that it should here.
 
 V
 
 26
 The decision of the district court upholding the pay order and the order of the district court holding Central in contempt are reversed, and the case is remanded for proceedings consistent with this opinion.
 
 
 27
 REVERSED AND REMANDED.
 
 
 
 *
 United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 The transfer restriction in the Central trust agreement reads as follows:
 ARTICLE VIII
 SPENDTHRIFT CLAUSE
 All benefit payments to participants or beneficiaries, if and when such payments shall become due, shall, except as to person under legal disability, or as provided in Article IX, be paid to such participants or beneficiaries in person and shall not be grantable, transferable, or otherwise assignable in anticipation of payment thereof, in whole or in part, by the voluntary or involuntary acts of any such paticipants or beneficiaries, or by operation of law, and shall not be liable or taken for any obligation of such participants or beneficiaries.
 We decline to accept the trustee's contention that Sec. 541(c)(2) should be confined in its recognition of enforceable transfer restrictions to those found in "traditional" spendthrift trusts. The language of Sec. 541(c)(2) does not suggest such a limitation, and the legislative history reveals only that the provision has the unambiguous purpose of preserving enforceable transfer restrictions in spendthrift trusts. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6325. Nowhere in the statute is there a requirement that the trust be "traditional," nor is there any definition of what might be found to constitute a "traditional" trust. We therefore rely on our reading of Illinois law to conclude that the trust here in issue would be enforceable under that state's law. But see Regan v. Ross, 691 F.2d 81, 85-86 (2d Cir.1982).
 
 
 [2]
 The trustee also suggests that in two earlier caes, this court has already held that all property subject to exemption under Sec. 522 is estate property. See Tignor v. Parkinson, 729 F.2d 977, 980 (4th Cir.1984); Shirkey v. Leake, 715 F.2d 859, 863 (4th Cir.1983). Neither of those cases addressed the question which the trustee's reading of them begs, and which is the narrow question before us: whether pension interests subject to transfer restrictions enforceable under Sec. 541(c)(2) are included in estate property, a question that precedes any question of their possible exemption. The statements in both Tignor and Shirkey were only making the point that under the Bankruptcy Reform Act, estate property is not now, as was formerly the case, confined to non-exempt property. See Tignor, 729 F.2d at 980
 
 
 [3]
 The Commissioner of Internal Revenue, as amicus, has represented to us that such a practical device would not violate the anti-assignment provisions of a qualified trust and threaten its tax exempt status under Sec. 501