In the Matter of Debtor No. NK87–01686 George Ira WATKINS, Debtor.

CHRYSLER–UAW PENSION PLAN, Appellant,

v.

George Ira WATKINS and Joseph Chrystler, Trustee, Appellees.

File No. K87–381 CA9.

United States District Court, W.D. Michigan.

July 1, 1988.

Dickinson, Wright, Moon, Van Dusen & Freeman, by Brian J. Renaud, Lansing, Michigan, for appellant.

Edward R. Barton, Allegan, Michigan, for appellee.

OPINION

ENSLEN, District Judge.

The September 28, 1987 Order of the United States Bankruptcy Court for the Western District of Michigan denying the motion of Chrysler–UAW Pension Plan ("Pension Plan") for Reconsideration of Order to Commence Interim Payments ("Interim Payment Order") is a "final order" over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 158(a). Chrysler–UAW Pension Plan ("appellant") appeals from the Bankruptcy Court's final order which confirmed the

Bankruptcy Court's interim payment order which directed the Pension Plan to pay to the Chapter 13 Trustee a portion of the monthly Pension Plan benefits owing to the debtor George Ira Watkins ("the debtor" or "the appellee" and Joseph Chrystler, "Trustee," and collectively as the "appellees"). It is clear that all that remains for the Bankruptcy Court to do here, pursuant to its final order, is to monitor the payment by the Pension Plan of Pension Plan funds to the Chapter 13 Trustee on the debtor's behalf. *Cf. City of Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir.1944) (a final judgment or order is one which "leaves nothing to be done in the case save to superintend, ministerially, the execution of the decree."); *see also Michigan Employment Security Commission v. Jenkins*, 64 B.R. 195 (Bankr.W.D.Mich.1986).

Prior to the commencement of the debtor's Chapter 13 case, the debtor was employed by Chrysler Corporation. The debtor retired from Chrysler effective November 1, 1980, and pursuant to the Pension Plan, is entitled to monthly pension benefits of $196.73. On June 1, 1987, debtor filed his Chapter 13 petition, and Bankruptcy Judge David E. Nims, Jr., entered his Interim Payment Order pursuant to which the Pension Plan was ordered to deduct $130.00 from the debtor's monthly pension benefit and to turn over that sum directly to the Chapter 13 Trustee. On July 20, 1987, the Pension Plan filed with the Bankruptcy Court, and served on counsel for the debtor and the Chapter 13 Trustee, a Motion for Reconsideration of the Interim Payment Order and a supporting brief. On July 24, 1987, while the Pension Plan's Motion for Reconsideration was pending, the Bankruptcy Court confirmed the debtor's proposed Chapter 13 plan.

The record reveals that due to an apparent administrative snafu, at the time of the hearing the Bankruptcy Court had not had the opportunity to read and study the Pension Plan's supporting brief. At the hearing, the appellees argued that after plan confirmation, the Bankruptcy Court has

the power under 11 U.S.C. § 1325(c)[1] to order any entity from whom the debtor receives income, including the Pension Plan, to pay all or any part of such income to the Chapter 13 Trustee. The Bankruptcy Judge found, after adjourning to read appellant's brief, that the cases cited therein were not on point. *See* Bankruptcy Transcript at 2. The Bankruptcy Judge found the issue to be the apparent conflict between 11 U.S.C. § 1325(c) and 11 U.S.C. § 541(c)(2).[2] Accordingly, the Bankruptcy Judge denied the Pension Plan's motion for reconsideration and issued its final order. The Bankruptcy Judge appears to have seen the issue as mostly an "administrative" one, and concluded that requiring Pension Plans to obey Chapter 13 payment orders was similar to requiring "governmental entities" to make such payment orders. The Bankruptcy Judge noted that these "governmental entities" had "worked out such differences" in the courts and had been judicially required to obey such payment orders. *See* Second Bankruptcy Transcript at 2–7.

*Standards of Review*

It is clear that on appeal a district court may affirm, modify or reverse the bankruptcy court's judgment order or decree, or it may remand the case with instructions for further proceedings. The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. Bankruptcy Rule 8013. Conclusions of law, or mixed questions of law and fact, are reviewed under a *de novo* standard. *See e.g., In re Fasano–Harriss Pie Co.*, 71 B.R. 287, 290 (Bankr. W.D.Mich.1987). Finally, it has been said that a district court may consider any issue presented by the record even if the issue

was not presented to the bankruptcy court. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir.1985).

*Discussion*

This case presents two major issues. The first issue is whether the debtor's interest, if any, in funds to be disbursed from the Pension Plan is property of his Chapter 13 estate and for that reason subject to the Bankruptcy Court's final order. The second issue is whether, even assuming that the debtor has an interest in the Pension Plan which is recognizable as property of his Chapter 13 estate, it was appropriate for the Bankruptcy Court to enter its final order directing the Pension Plan to make payments directly to the Chapter 13 Trustee.

The Pension Plan at issue here provides in relevant part:

... No assignment of any pension, supplemental allowances and special age 65 benefit or part of any of them will be recognized or permitted, and payment ... may cease ... upon notice of assignment, attachment, or garnishment of the pension ... and attachment or other legal process against the pension ... will not be recognized....

Appellant argues that this language is included in the Pension Plan in order to satisfy certain requirements under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Internal Revenue Code, as amended ("IRC") for plan qualification. *See* 29 U.S.C. § 1056[3] and 26 U.S.C. § 401(a)(13).[4]

■ The appellant argues further that the Pension Plan contains no provision for hardship distributions to the debtor or for a

---

1. 11 U.S.C. § 1325(c) provides:
   After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

2. 11 U.S.C. § 541(c) provides, in pertinent part:
   (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a cause under this title.

3. 29 U.S.C. § 1056(d)(1) [ERISA] provides, in pertinent part:

   Each pension plan *shall* provide that benefits under the plan may not be assigned or alienated (emphasis added).

4. 26 U.S.C. § 401(a)(13) [IRC] provides, in pertinent part:
   A trust *shall not* constitute a qualified trust under this section *unless* the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated (emphasis added).

lump sum payment in lieu of monthly benefits. Further, contributions to the Pension Plan are made only by Chrysler. Finally, employee-beneficiaries of the Pension Plan have no power to revoke the Pension Plan trust and reach its corpus. The gravaman of appellant's argument is that the Bankruptcy Court had no authority to hold that pension benefits paid pursuant to a Pension Plan in the nature of a state law spendthrift trust are property of the debtor's estate. It is clear that 11 U.S.C. § 541(a)(1)[5] broadly defines "property of the estate" to include all legal or equitable interests of the debtor in property except for interests defined in 11 U.S.C. § 541(b) and 11 U.S.C. § 541(c)(2). 11 U.S.C. § 541(c)(2) provides that a *restriction* on the transfer of a beneficial interest in a trust enforceable under applicable non-bankruptcy law is enforceable in bankruptcy. Thus, it is clear that interests of a debtor which are subject to enforceable state law transfer restrictions are *not* property of a debtor's estate. *See e.g., Bezanson v. Maine National Bank*, 42 B.R. 599, 601–602 (Bankr.D.Maine 1984) (holding that a debtor's interest in an ERISA-qualified, employer-controlled stock bonus and profit sharing retirement trust was excluded from the debtor's estate pursuant to 11 U.S.C. § 541(c)(2) and applicable state spendthrift trust law, where the plan involved no active participation by the employee; where the plan included a statutorily required anti-alienation provision; and where the plan precluded borrowing and withdrawals by the debtor, except on the debtor's death, termination of employment, disability, retirement or termination of the plan.). Once such property has been *actually paid* to the debtor pursuant to the terms of the trust, the property may become "property of the estate."

In *McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1206 (4th Cir.1985), the court said:

The estate property definition of section 541 is adopted for Chapter 13 plans by 11 U.S.C. § 1306(a), which for purposes of Chapter 13 proceedings also draws into the definition of estate property after-acquired property of the debtor that would qualify under § 541 as estate property. *Hence, a pensioner's interest in a trust fund that in the hands of the fund trustee is subject to an enforceable transfer restriction and is therefore not in that form section 541 estate property, may become estate property in a Chapter 13 plan once paid to a debtor under the terms of the trust.* (emphasis added).

A number of circuit courts of appeal have considered and/or applied the so-called "state law spendthrift trust rule" set forth in *Bezanson.* In *Regan v. Ross*, 691 F.2d 81 (2d Cir.1982), the Second Circuit held that pension benefits were property of a Chapter 13 debtor's estate, even where the pension plan provisions restricting assignment of pension plan benefits were required by statute and state spendthrift trust law. Accordingly, the Second Circuit affirmed the Chapter 13 payment order issued by the Bankruptcy Court. However, *Regan v. Ross* was expressly rejected by the Fourth Circuit in *McLean v. Central States, Southeast and Southwest Areas Pension Fund, supra.* The *McLean* court adopted the approach set forth in *Goff v. Taylor*, 706 F.2d 574, 586–89 (5th Cir.1983), which recognized that a determination of whether a particular pension fund interest is the property of a debtor's estate is determined only by looking at whether a restriction on transfer of the pension fund interest is enforceable under non-bankruptcy, that is, state spendthrift trust law. The *Mclean* court said:

First, the trustee urges that because pension interests are made expressly subject to exemptions by a bankrupt under 11 U.S.C. § 522(d)(10)(E), they must of necessity be estate property under

---

**5.** 11 U.S.C. § 541(a) provides, in pertinent part: The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

§ 541(a)(1); and that this interpretation is made even more compelling by Congress' clear intention to make Chapter 13 proceedings available to pensioners.

*Though two circuits have apparently accepted this argument, see Samore v. Graham (In re Graham),* 726 F.2d 1268, 1272–73 (8th Cir.1984); *Regan v. Ross,* 691 F.2d 81 (2d Cir.1982), *we do not because, with all respect, we think its essential premise is flawed.* The fact that pension interests are in general made subject to exemption from bankruptcy estate property does not mean that some may not be included in estate property at all. *We are more persuaded by, and adopt, the Fifth Circuit's approach in Goff v. Taylor (In re Goff), 706 F.2d 574, 586–89 (5th Cir.1983), and that of the bankruptcy court in Kwaak, 42 B.R. at 601–02.* With those courts, we believe that whether a particular pension fund interest subject to transfer restrictions is initially included in estate property is *wholly determined by whether, per § 541(c)(2), the restriction is enforceable under applicable nonbankruptcy law,* including any public policy concerns that might make unenforceable a restriction in a pension plan settled and revocable by a beneficiary. *See, e.g., Goff,* 706 F.2d at 588.

This *interpretation in no way undercuts the exemption provisions of § 522(d)(10)(E).... Section 541(c)(2) is simply a more narrowly focussed provision that excludes from estate property some, but not all, of the employment benefits which, if included in estate property, might then be subject to exemption by the debtor under § 522(d)(10)(E). This construction, we believe, harmonizes the two sections while that urged by the trustee would effectively read out § 541(c)(2) in unwarranted deference to a misperceived conflict with § 522(d)(10)(E). 762 F.2d at 1207–08 (emphasis added).*

The Fourth Circuit reasoned that because the pension plan anti-alienation provisions of the pension plan at issue would be enforceable under Illinois spendthrift trust law, the debtor's *predisbursement interest*

in the plan was *excluded from estate property* by operation of 11 U.S.C. § 541(c)(2). *Id.* at 1207 (emphasis added). Accordingly, the Fourth Circuit reversed the Chapter 13 payment order entered by the bankruptcy and district courts below on the grounds that the bankruptcy court had no authority to order the payment of the money that was not property of the debtor's estate. In a previous case, *Michigan Employment Security Commission v. Jenkins,* 64 B.R. 195 (W.D.Mich.1986), this Court alluded to the holding in *McLean,* but did not have occasion to apply it. In *Jenkins,* the issue was whether the debtor's Michigan unemployment benefits were property of the state pursuant to 11 U.S.C. § 541(a)(1). This Court held that the unemployment benefits were includable in the property of the debtor's Chapter 13 estate but noted that the appellant failed to argue that the unemployment benefits received by the debtor were an excludable interest in a state law spendthrift trust. This Court specifically noted:

> Paragraph (2) of § 541 provides a limited exception for restrictions 'on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law ...'. 11 U.S.C. § 541(c)(2); *see McLean,* 762 F.2d at 1206–07 (holding that an anti-assignment clause in a pension plan is valid under § 541(c)(2) and that the pension benefits thus do not become property of the estate and may not be made subject to a pay order under section 1325(c)). Appellant has not attempted to argue, however, that appellees' unemployment compensation benefits fall within the scope of § 541(c)(2).

It is clear that under the *McLean* approach, ERISA-qualifying pension plans which contain anti-alienation provisions are excluded from the estate pursuant to § 541(c)(2) *only* if they are enforceable under state law as a spendthrift trust. *Cf. Lichstrahl v. Bankers Trust,* 750 F.2d 1488, 1490 (11th Cir.1985) (rejecting debtor's claim of exclusion of pension plan payments pursuant to 11 U.S.C. § 541(c)(2) where the debtor was both plan settlor and

sole distributor, officer and shareholder of professional corporation for which plan was established; where the debtor as settlor could amend or terminate the plan trust; and where the plan permitted employees including the debtor to contribute to and borrow from the plan. The court concluded that the plan was not enforceable as a state law spendthrift trust.) *Accord Daniel v. Security Pacific National Bank,* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Samore v. Graham,* 726 F.2d 1268 (8th Cir.1984).

In *Matter of LaFata,* 41 B.R. 842 (Bankr.E.D.Mich.1984), the court noted the analysis set forth in *Goff* which made the distinction between *self-settled* ERISA plans and those which are managed by *independent trustees.* The court said "[o]nly a debtor who is an employee covered by a qualified ERISA plan managed by independent trustees may protect his investment [from administration by the bankruptcy court] because such a plan *would normally qualify as a spendthrift trust within the meaning of § 531(c)(2)."* (emphasis added).

The Court believes that the precise issue here is whether this employer-created and controlled Pension Plan is considered to be a state law spendthrift trust under the law of Michigan. The Pension Plan at issue establishes a pension fund (*see* the Pension Plan at § 1, page 1, attached as Exhibit "A"), a plan trustee (§ 2, at page 2), designates named fiduciaries (§ 28 at 66), and contains numerous other provisions for acts of trust administration. The Pension Plan further provides that it is to be construed, governed and administered in accordance with the laws of the state of Michigan (§ 30 at 71). It appears that the appellee may only receive monthly benefits under the Pension Plan and that there are no provisions for hardship distributions to the appellee or for a lump sum in lieu of monthly payments. *See* Pension Plan at § 14. Section 14 provides in pertinent part:

> Pensions, supplemental allowance and special age sixty-five benefits shall be paid in monthly installments.

The purpose of the pensions, ... *being to provide maintenance for retired employees,* no assignment of any pension, or part of any [pension] will be recognized or permitted, and payment ... may cease ... upon notice of assignment, attachment, or garnishment of the pension ... and attachment or other legal process against the pension ... will not be recognized except as may be required by law. (emphasis added).

It is true that the plan provides for certain deductions which relate solely to the support and maintenance of the appellee and his dependents. *See e.g.,* Deductions for Blue Cross–Blue Shield coverage for the appellee and his dependents; (§ 14 at 51–52); the payment for certain welfare benefits provided to the appellee while still an employee of the Chrysler Corporation (§ 14 at 53); deductions to maintain the appellee's membership in the UAW, so that his interest in the Pension Plan may be adequately represented and protected (§ 14 at 53–55); and deductions to honor a "qualified domestic relations order" as defined by the Federal Retirement Equity Act of 1984 (§ 14 at 53)).

The appellees argue that these deductions, specifically the domestic relations order and the check-off of union dues, indicate that the Pension Plan at issue is not a true spendthrift trust because under a "true" spendthrift trust the beneficiary can have absolutely *no* control over any of the trust assets or any income from the trust.

Appellees argue further that the exception in § 541(c)(2) should be construed narrowly to apply to only "true" spendthrift trusts. The appellees have cited and discussed numerous cases in support of their assertion. However, the Court believes each of these cases is distinguishable from the case *sub judicie.* Moreover, the Court agrees with the court's analysis in *In re Braden,* 69 B.R. 93, 94 (Bankr.E.D.Mich. 1987) which noted that "experience suggests that the prime conclusion to be drawn from these [cited] cases is that each case must be evaluated on its own facts. Different retirement plans have varying provisions regarding alienation and trans-

ferability. Thus, to conclude that one case should dictate the results of another case is inappropriate." Put differently, each case deals with a different kind of retirement plan which has been created under different circumstances and which has different provisions.

█ The Pension Plan at issue here clearly intended to provide for the maintenance and support of the appellee and his dependents, and, at the same time, to protect him against his own "improvidence." Under the Pension Plan, the appellee is prohibited from voluntarily *or involuntarily* alienating his interest in the Pension Plan in a way which is inconsistent with the intent and provisions of the plan. Accordingly, the Court concludes that the Pension Plan is enforceable under Michigan law as a spendthrift trust and the appellee's interest in the plan is excluded from property of his Chapter 13 estate pursuant to 11 U.S.C. § 541(c)(2).

*In Fornell v. Fornell Equipment, Inc.,* 390 Mich. 540, 548, 213 N.W.2d 172 (1973) (emphasis added), the Michigan Supreme Court described a spendthrift trust as one which is:

> Created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, the spendthrift trust is one which restrains either the voluntary *or involuntary alienation by a beneficiary of his interest* in the trust, or which, in other words, *bars such interest from seizure and satisfaction of his debts.*

The Michigan Supreme Court has also stated that in construing the trust instrument, it will "look into all the circumstances under which [the trust] was made, in order to determine the proper meaning of the transaction. It will do this not only to sustain a just claim, but to defeat an unlawful demand." *Foster v. Ypsilanti Savings Bank,* 299 Mich. 258, 268–69, 300 N.W. 78 (1941). It appears to be the law in Michigan that an assignment by an income beneficiary of his interest in a spendthrift trust will only be sanctioned where it is shown that the assignment is consistent with the provisions of the trust and with the settlor's clear intent. *See Preminger v. Union Bank & Trust Company, N.A.,* 54 Mich.App. 361, 367–69, 220 N.W.2d 795 (1974). Moreover, the appellant argues, and the Court agrees, that even assuming that the deduction provisions of the Pension Plan are inconsistent with the concept of a spendthrift trust, it is likely that a Michigan court would uphold the Pension Plan as a valid spendthrift trust. *See Union Guardian Trust Co. v. Nichols,* 311 Mich. 107, 114, 18 N.W.2d 383 (1945) ("the intent of the parties to the trust agreement, as gathered *from the entire instrument,* controls notwithstanding that there may be some language therein in derogation of the interior sense of the transaction ... [w]e must give effect to the true intent of the parties notwithstanding any nomenclature to the contrary or ambiguous statements in the instrument.").

Although I believe it does not serve a useful purpose to analyze, in detail, the cases relied upon by appellees, I will briefly note the differences in the pension plans in those cited cases and the plan in the case before me which make the former cases readily distinguishable. For example, in *In the Matter of Swanson,* 79 B.R. 422 (D.C. Minn.1987), the court analyzed the traditional spendthrift trust in Minnesota and found that the debtors' statutorily-mandated contributions to a pension fund were property of the debtors' bankruptcy estate because the debtors could withdraw the entire amounts they had contributed to the pension plan when they were no longer employed as teachers. Significantly, in *Swanson,* the debtors were able to withdraw their *own* contributions.

In the case before me, on the other hand, the Chrysler–UAW Pension Plan does not provide for contributions by employees, nor for withdrawal by them of any funds in the Pension Plan upon their retirement or when they cease working for Chrysler—except for the scheduled monthly payments.

In *In re Faulkner,* 79 B.R. 362 (Bankr.E.D.Tenn.1987), the debtor was allowed to apply for a loan from his vested interest in

a pension plan. Further, he could terminate the plan at any time prior to age sixty-five and could receive the entire vested portion of his pension account in a single lump sum. The court found that under Tennessee law, the pension plan did not qualify as a spendthrift trust because the debtor-pensioner had ready access at any time to his vested interest. However, here, the Chrysler–UAW Pension Plan does not provide for a loan against a retiree's vested interest, nor does it allow for the receipt of a lump sum pension benefit.

*In re Riso*, 79 B.R. 138 (Bankr.N.H.1987) again involved a plan which allowed for a *lump sum distribution*. Interestingly, the court there found that the spendthrift provisions in the *Riso* plan before it *were* enforceable under Illinois law but that the bankruptcy trustee would be entitled only to the greatest amount of money to which the debtor was actually entitled on the date of the filing of his bankruptcy petition. Thus, even assuming, *arguendo*, that *Riso* were applicable here, the Chapter 13 trustee in this case would apparently, under *Riso*, only be entitled to a portion of the one monthly benefit payment to which the appellee was entitled at the time of the filing of his bankruptcy petition.

In *In re Threewitt*, 20 B.R. 434 (Bankr. D.Kan.1982), a debtor was allowed to withdraw funds from his pension plan and use them for any "support" purpose. Further, the debtor could attain loans against his pension fund interest. In the case before me, the appellee cannot withdraw any funds from the Pension Plan. Further, the support deductions which are provided by the Pension Plan are made *by* the Pension Plan and do not involve withdrawal of funds which at any time come into the custody of the appellee. Again, there are no loans provided for under the Pension Plan at issue here.

In *In re DeWeese*, 47 B.R. 251 (Bankr.W. D.N.C.1985) at issue was a stock bonus plan under which the debtor could receive, upon retirement or death, company stock in the full amount of his vested interest in the bonus plan. In the case before me, the appellee is not entitled to a lump sum dis-

tribution of his interest in the Pension Plan, but is only entitled to receive monthly payments under the Plan. Moreover, the Court has previously noted that *In re Lichstrahl, supra, In re Graham, supra,* and also *In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986) are all easily distinguishable in that in all those cases the debtor was both pension plan settlor *and* pension plan beneficiary. Thus, in the latter three cases the settlor/debtor exercised *complete dominion* over the pension plan funds and contributions.

I conclude that the anti-alienation provisions in the Pension Plan at issue would be enforceable under Michigan spendthrift trust law as a valid restriction on transfer. I further find that the debtor has no right to alienate his interest in the Pension Plan whether voluntarily or involuntarily. Moreover, because contributions to the Pension Plan are made only by Chrysler, and the employee-beneficiaries of the Pension Plan have no power to revoke the trust and reach its corpus, public policy concerns would not prevent enforcement of the restriction. *See e.g., Johnson v. Fenslage,* 724 F.2d 1138, 1140–41 (5th Cir.1984). Further, the Court concludes that the debtor's pension benefits which have not been disbursed to him are not property of the debtor's estate and that the Bankruptcy Court erred in holding that they may be the subject of a Chapter 13 payment order. Finally, because of the Court's resolution of the first issue presented, there is no need to address the second issue.

Accordingly, for all the reasons previously set forth in this opinion, I will enter an order vacating the Bankruptcy Court's order of September 28, 1987.