**In re Thomas SNIPE, Jr. and Lucille Snipe, Debtors.**

**No. 00–01561.**

United States Bankruptcy Court, District of Columbia.

May 6, 2002.

———

Harris Ammerman, Ammerman & Goldberg, Washington, DC, for Debtors.

Cynthia A. Niklas, Washington, DC, trustee.

*DECISION RE MOTION TO COMPEL DEDUCTION AND REMITTANCE OF CHAPTER 13 PLAN PAYMENT*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Section 1325(c) of the Bankruptcy Code (11 U.S.C.) provides:

> After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

The debtor Thomas Snipe is a retiree of the Washington Suburban Sanitary Commission ("WSSC"), and draws a pension from the WSSC Employees' Retirement Plan. Cynthia A. Niklas, the standing chapter 13 trustee, seeks a payment order under § 1325(c) to compel WSSC to deduct and remit to her from Mr. Snipe's pension the $330 monthly payment the debtors agreed to make under their confirmed chapter 13 plan. The court will deny Niklas's motion for the following reasons.

I

■ The trustee concedes that the Retirement Plan qualifies as an ERISA-qualified pension plan and hence is not property of the estate. *Patterson v. Shumate*, 504 U.S. 753, 760, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). That concession necessarily precludes issuing a § 1325(c) payment order to the WSSC Retirement Plan.

In *Shumate*, 504 U.S. at 759, 112 S.Ct. 2242, the Court held that an ERISA-qualified pension plan includes an antialienation provision that is a "restriction on the transfer of a beneficial interest of the debtor that is enforceable under applicable nonbankruptcy law" under 11 U.S.C. § 541(c)(2). The Court declined to recognize any exceptions to ERISA's antialienation provision within the bankruptcy con-

text, thereby assuring "that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status." *Shumate*, 504 U.S. at 764, 112 S.Ct. 2242. For this reason, the court declines to view § 1325(c), despite its seemingly plain language, as overriding ERISA's antiassignment provision. *Contra, In re Simmons*, 94 B.R. 74 (Bankr.W.D.Pa.1988).

■ Although the debtor's chapter 13 case and his chapter 13 plan are voluntary acts, and the plan is dependent on the debtor's pension income, ERISA does not distinguish between voluntary and involuntary assignments: both types of assignments are barred by ERISA's antialienation provision.

As a practical matter, the debtor might fare better if the court were to issue a § 1325(c) payment order to the WSSC. This would assure that his plan payments are made on time, even if he were ill or out of town when he would otherwise receive the pension payment himself. However, the Court made clear in *Shumate*, 504 U.S. at 765, 112 S.Ct. 2242, that "notwithstanding strong equitable principles," courts ought not imply an exception to ERISA's antialienation provision. Moreover, declining to issue a payment order protects the debtor from WSSC's sending the trustee a pension payment once the debtor has elected to discontinue making chapter 13 plan payments, and to face the consequences of such a default, or has elected to use an alternative source of payment.

## II

There is no evidence that Congress intended to override ERISA's antiassignment provision by virtue of § 1325(c). Section 1325(c) does not expressly address antiassignment provisions in other stat-utes, or immunity of a payer from a payment order. Under the Bankruptcy Act, the sovereign immunity of the United States barred payment orders directed to the United States. *See United States v. Krakover*, 377 F.2d 104 (10th Cir.), *cert. denied*, 389 U.S. 845, 88 S.Ct. 97, 19 L.Ed.2d 112 (1967). Although 11 U.S.C. § 106 has changed that result under the Bankruptcy Code, the immunity is waived by § 106, not § 1325(c). In the case of antiassignment provisions, there is no corresponding waiver of that restriction in the Bankruptcy Code.

The Court's observation in *Shumate*, 504 U.S. at 765, 112 S.Ct. 2242, that it has declined "notwithstanding strong equitable considerations to the contrary, to recognize an implied exception to ERISA's antialienation provision" strongly suggests that the Court would not view § 1325(c) as modifying that provision by implication. Although it involved Social Security benefits protected by the antiassignment provision of 42 U.S.C. § 407, I find persuasive, and as applicable here, the reasoning of *Hildebrand v. Social Sec. Admin. (In re Buren)*, 725 F.2d 1080 (6th Cir.), *cert. denied*, 469 U.S. 818, 105 S.Ct. 87, 83 L.Ed.2d 34 (1984), which held that § 1325(c) could not be viewed as amending by implication 42 U.S.C. § 407 to create an exception to its antialienation provision. *Contra, United States v. Devall*, 704 F.2d 1513 (11th Cir.1983).[1] Section 1325(c) does not purport to address antialienation restrictions in other provisions of law, and absent a clear expression in that regard, the court declines to view it as overriding such nonbankruptcy law entitlements. I thus agree with the holding in *McLean v. Cent. States, Southeast and Southwest Ar-*

---

1. The enactment in 1983 of 42 U.S.C. § 407(b) now clearly limits the applicability of § 1325(c) to Social Security benefits. Both *Buren* and *Devall* were decided based on 42 U.S.C. § 407 as it stood prior to the enactment of 42 U.S.C. § 407(b).

*eas Pension Fund (In re McLean),* 762 F.2d 1204 (4th Cir.1985), that § 1325(c) does not amend by implication ERISA's antiassignment provision.[2]

### III

The court does not rest its decision solely on the pension not being property of the estate. That was the approach taken in *McLean,* 762 F.2d at 1209. Of course, because the pension is not estate property, a § 1325(c) payment order cannot be justified by treating the trustee as the owner of the pension and hence entitled to administer the pension as estate property. However, there are plenty of sources of income that are not estate property and which nevertheless may be the subject of a § 1325(c) order or a payment order under 11 U.S.C. § 105:

- For example, a debtor's postpetition wages which are generally property of the estate in a chapter 13 case under 11 U.S.C. § 1306(a)(2) may have revested in the debtor under 11 U.S.C. § 1327(b), by reason of confirmation of a plan. Plainly the court could nevertheless issue a payment order to the debtor's employer despite the wages having ceased to be estate property.
- As another example, a debtor's father may agree to let his wages be the subject of a § 1325(c) order. Even though the wages were not estate property, the court can, by reason of the father's consent, issue the § 1325(c) order.

These examples serve as well to demonstrate that the issue is not one of subject matter jurisdiction. In both examples, the court undoubtedly has subject matter jurisdiction under 28 U.S.C. § 1334 to issue a § 1325(c) payment order despite the non-estate character of the wages.

Accordingly, the court does not rest its decision on any lack of subject matter jurisdiction based on the pension not being property of the estate, as in the approach followed in *In re Vega,* 163 B.R. 489 (Bankr.W.D.Tex.1994).

However, *Vega* is correct in focusing on the court's power (and hence jurisdiction in that sense) to control the res that would be the subject of the § 1325(c) order. If the res is not property of the estate under § 541(c)(2) by reason of antiassignment provisions, then the court has no right to control that res as property of the estate, and the antiassignment provision additionally precludes issuance of a § 1325(c) payment order. The relevance of § 541(c)(2) is that both it and § 1325(c) ought to share the policy of respecting the pension's antialienation features the same in bankruptcy as outside of bankruptcy. That implicit policy of the Bankruptcy Code, specifically identified in part III(C) of the opinion in *Shumate,* 504 U.S. at 763–65, 112 S.Ct. 2242, is sufficient to override the seemingly plain language of § 1325(c) viewed in isolation, and to conclude that § 1325(c) does not abrogate the antialienation provisions that apply under nonbankruptcy law.

### IV

For the foregoing reasons, the chapter 13 trustee's motion to compel WSSC to

---

**2.** *Regan v. Ross,* 691 F.2d 81 (2d Cir.1982), held that a pension under an ERISA-qualified plan could be the subject of a § 1325(c) order, but it did so on the erroneous assumption that the pension was estate property despite § 541(c)(2), and if the pension was estate property then necessarily the funds would be subject to the turnover power of 11 U.S.C. § 542 in a chapter 7 case (where the trustee distributes property of the estate), and, even less intrusively, the § 1325(c) power in a chapter 13 case (where the trustee pays creditors from the debtor's plan payments).

deduct and remit to her the debtor's chapter 13 plan payments will be denied.