Roy E. JACOBS

v.

Molly T. SHIELDS.

Bankruptcy No. 3–88–1566.
Civ. No. 4–89–996.

United States District Court,
D. Minnesota,
Fourth Division.

June 27, 1990.

Anne Bergman, UAW–Ford Legal Services Plan, St. Paul, Minn., for appellant.

Vincent J. Fahnlander, Hart, Bruner & O'Brien, Minneapolis, Minn., for appellee.

ROSENBAUM, District Judge.

This matter is before the Court on Roy E. Jacobs' (debtor) appeal from separate orders of the Honorable Dennis D. O'Brien, United States Bankruptcy Judge, filed July 21, 1989, and, October 3, 1989, setting forth findings of fact and conclusions of law. The July 21, 1989, order found that the debtor's interest in his pension plan was the property of the bankruptcy estate. The October 3, 1989, order sustained Molly T. Shield's (trustee) objection to the exemption of the pension plan interest.

Based upon the files, records, and proceedings herein, and for the reasons set forth below, this Court concludes the debtor's interest in the pension plan is not property of the bankruptcy estate. Accordingly, the bankruptcy court's July 21, 1989, order is reversed. This determination obviates the need to address debtor's appeal from the October 3, 1989, order.

When a district court considers an appeal from a decision of the bankruptcy court, it sits as an appellate court. *In re Neis,* 723 F.2d 584, 588 (7th Cir.1983); Bankruptcy Rule 8001. The bankruptcy court's findings of fact are subject to the clearly erroneous standard of review. Bankruptcy Rule 8013. Its conclusions of law are subject to *de novo* review. *Stevens v. Pike County Bank,* 829 F.2d 693 (8th Cir.1987).

The parties have stipulated to the relevant facts. The debtor is a 47–year–old general assembler employed by Ford Motor Co. (Ford), which is based in Detroit, Michigan. On May 13, 1988, he filed a Chapter 7 bankruptcy petition. The debtor had been employed by Ford for 10½ years. At the time of his petition, he was vested in a pension plan funded by Ford. The debtor listed his interest in the pension plan in the bankruptcy petition, but claimed it was exempt from the bankruptcy estate. The trustee objected to the claim of exemption and a hearing was held on March 21, 1989. The debtor argued that his pension plan interest was not property of the estate pursuant to 11 U.S.C. § 541(c)(2) or, in the alternative, that the pension was exempt under 11 U.S.C. § 522(d)(10)(E). The Bankruptcy Court, by order filed July 21, 1989, held that the pension interest was part of the bankruptcy estate. In an order, dated October 3, 1989, the bankruptcy judge sustained the trustee's objection to the debtor's claimed exemption because he found the pension was not reasonably necessary for the debtor's or his dependents' support. From these orders, the debtor appeals.

When a Chapter 7 bankruptcy petition is filed, an estate is created. 11 U.S.C. § 541(a). The estate's property includes, *inter alia,* "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Under this scheme, a debtor's interest in property is transferred to the estate, notwithstanding any restriction on its transfer that nonbankruptcy law would recognize. 11 U.S.C. § 541(c)(1). The exception to this rule is set forth in 11 U.S.C. § 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

The debtor advances a four-part argument in support of the exclusion of the pension interest from the bankruptcy estate under 11 U.S.C. § 541(c)(2). First, he argues spendthrift trusts are within the scope of 11 U.S.C. § 541(c)(2); second, he asserts there is no *per se* rule that pension plans cannot be spendthrift trusts; third, he maintains the pension plan at issue must be analyzed under Michigan law; and

fourth, he contends this particular pension plan qualifies as a spendthrift trust under Michigan law.

The trustee agrees that § 541(c)(2) applies to spendthrift trusts. The trustee, however, argues the pension plan is not a spendthrift trust under Minnesota law, which she asserts is applicable here. The Bankruptcy Court's July 21, 1989, order determined that the § 541(c)(2) exception applies only to traditional spendthrift trusts and that a pension plan cannot be a spendthrift trust for purposes of excludability under § 541(c)(2). Bankruptcy Order at 2–3 (July 20, 1989) (citing *In re Swanson*, 873 F.2d 1121 (8th Cir.1989); *In re Graham*, 726 F.2d 1268, 1271 (8th Cir. 1984)). Notwithstanding that finding, the Bankruptcy Court determined that even if pension plans can be excluded as spendthrift trusts, the Ford pension plan did not constitute a spendthrift trust under either Michigan or Minnesota law. The Bankruptcy Court found that both Michigan and Minnesota law require a gift of the trust corpus from a donor for the benefit of a donee to establish a spendthrift trust. *Id.* at 4. The Bankruptcy Court then determined that the pension plan was not a gift and therefore was not a traditional spendthrift trust and was property of the estate. *Id.* at 5.

■ Based upon a *de novo* review, this Court finds the Bankruptcy Judge's conclusion that the pension plan could not be excluded from the bankruptcy estate under § 541(c)(2) is in error. The exception in 11 U.S.C. § 541(c)(2) is narrow: "Congress only intended by § 541(c)(2) to preserve the status of traditional spendthrift trusts...." *In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984). But the *Graham* court held only that the phrase "applicable non-bankruptcy law" in § 541(c)(2) does not include ERISA. *Id.* In other words, an

ERISA plan is not excluded under § 541(c)(2) simply by operation of ERISA.

The holding in *Graham* makes no absolute prohibition against the exclusion of pension plans under 11 U.S.C. § 541(c)(2).[1] Instead, this Court finds that "applicable nonbankruptcy law" means a particular pension plan must be analyzed under the appropriate state's spendthrift trust law. The Eighth Circuit has implicitly adopted this approach. See *In re Swanson*, 873 F.2d 1121, 1123–24 (8th Cir.1989), where the court extensively analyzed the question of whether a pension fund qualified as a spendthrift trust under state law. This approach has been followed in other circuits. *See, e.g., McLean v. Central States, S.E. and S.W. Areas Pension Fund*, 762 F.2d 1204, 1206–07 (4th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir. 1985); *In re Goff*, 706 F.2d 574, 587–88 (5th Cir.1983).[2] For these reasons the Bankruptcy Court's holding, at p. 4 of its Order of July 20, 1989, that "pension plans cannot be spendthrift trusts for purposes of excludability under 11 U.S.C. § 541(c)(2)," is too broad.

Having determined that it is possible for an appropriate pension plan to be considered a spendthrift trust and, therefore, excludable, the court turns to the plan in question. The debtor argues Michigan law must be applied to determine whether this employer-funded pension plan is a spendthrift trust. The debtor notes that the pension plan itself specifies Michigan law as the governing law. Ford is headquartered in Michigan. The *res* is held in Michigan. And the pension plan was created in Michigan. The trustee argues Minnesota law applies and contends Minnesota creditors would be prejudiced if Michigan law were applied.[3]

---

1. For a thorough discussion of the split of authority on how to apply *Graham*, see *In re Boon*, 108 B.R. 697, 701–06 (W.D.Mo.1989).

2. It should also be noted that while 11 U.S.C. § 522(d)(10) is an *exemption* provision for pension plans in general, that section does not preclude finding particular pension plans *excludable* under § 522(c)(2). Many pension plans will

fail to qualify as valid spendthrift trusts. *Boon*, 108 B.R. at 705. § 522(c)(2) is simply a more focused provision.

3. The Court notes that the Bankruptcy Court's July 21, 1989, order did not address the choice of law question.

The forum state's choice of law rules determine which state's substantive law will be applied. *In re NWFX, Inc.*, 881 F.2d 530, 536 (8th Cir.1989) (*citing Union Nat'l Bank v. Federal Nat'l Mortg. Ass'n.*, 860 F.2d 847, 853 n. 13 (8th Cir.1988)); *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 206 (4th Cir.), *cert denied*, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988). Where there is a conflict between two states' substantive law, Minnesota choice of law principles direct a court to determine first whether contacts with Minnesota are sufficient to make application of Minnesota law consistent with due process. *Hime v. State Farm Fire & Casualty Ins.*, 284 N.W.2d 829, 832 (Minn. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). The Court finds that, because the debtor worked in Minnesota, certain of his creditors are located in the state, he filed for bankruptcy in Minnesota, and Ford maintains plants and offices here, application of Minnesota law would be consistent with due process.

Having decided that contacts with Minnesota are sufficient to make application of Minnesota law comport with due process, the court must apply the choice of law factors adopted by the Minnesota Supreme Court in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). The five choices influencing considerations are 1) predictability of results, 2) maintenance of interstate and international order, 3) simplification of the judicial task, 4) advancement of the forum's governmental interest, and 5) application of the better rule of law. *Hime*, 284 N.W.2d at 833. The *Milkovich* factors here compel the conclusion that Michigan law governs. As noted, the plan's terms provide that Michigan law shall ap-

ply. Michigan has sufficient contact with and interest in the issue as the plan was created there, the *res* is located there, the debtor is presently working in Michigan, and Ford is headquartered in Michigan. Either state's law can be applied without practical difficulty. Minnesota does not have a significant governmental interest because under the exemption provisions of Minnesota Statutes, § 550.37 Subd. 24, the Minnesota creditors cannot reach the debtor's pension funds.[4]

The Court finds that there is another, and highly practical reason favoring the application of Michigan law to this ERISA pension plan: Ford Motor Company is a modern industrial giant. While based in Michigan, this plan covers employees in many of the states of our Union. It is not beyond conjecture that vested plan participants either work in or have moved to each of the fifty states. It would be wildly impractical to subject this plan to fifty different and often inconsistent treatments in law.

Because the first four choice-influencing considerations weigh in favor of applying Michigan law, this Court need not consider which state has the "better law." *Meyers v. Government Employees Ins. Co.*, 302 Minn. 359, 368, 225 N.W.2d 238, 244 (1974).

Turning, at long last, to the analysis of the pension plan under Michigan spendthrift trust law, this Court finds the plan qualifies as a spendthrift trust and, as such, is excluded from the bankruptcy estate pursuant to § 541(c)(2). In Michigan, a spendthrift trust

> is one created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his

---

4. § 550.37 provides in pertinent part:

550.37. Property exempt

   Subdivision 1. The property mentioned in this section is not liable to attachment, garnishment, or sale on any final process, issued from any court.

   .    .    .    .

   Subd. 24. Employee benefits. The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, individual retirement account, individual re-

tirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service:

   .    .    .    .    .

(2) to the extent of the debtor's aggregate interest under all plans and contracts up to a present value of $30,000 and additional amounts under all the plans and contracts to the extent reasonably necessary for the support of the debtor and any spouse or dependent of the debtor.

improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts....

*Fornell v. Fornell Equip., Inc.,* 390 Mich. 540, 548, 213 N.W.2d 172, 176 (1973) (*quoting* 54 Am.Jur., Trusts § 148).

The pension plan at issue here is funded exclusively by Ford. Ford Motor Company Pension Plan, Art. VIII. All funds are held in trust. *Id.* Ford appoints the trustee. *Id.* The pension plan provides for an administrative board to administer the plan. *Id.,* Art. VII. Under the plan, the debtor is to receive only monthly benefits upon actual retirement; there are neither provisions for hardship withdrawals, nor for loans against the fund, nor for distribution upon termination of employment. *Id.,* Arts. IV, V. The plan prohibits the alienation of benefits. *Id.,* Art. V.[5]

In *In re Watkins,* 95 B.R. 483 (W.D. Mich.1988), the Michigan bankruptcy court found a Chrysler pension plan to be a spendthrift trust under Michigan law and therefore excluded from the bankruptcy estate under § 541(c)(2). For the purposes of this opinion, the Chrysler pension plan in *Watkins* was virtually identical to the Ford plan. The Court concluded:

> that the anti-alienation provisions in the Pension Plan at issue would be enforceable under Michigan spendthrift trust law as a valid restriction on transfer. I further find that the debtor has no right to alienate his interest in the Pension Plan whether voluntarily or involuntarily. Moreover, because contributions to the Pension Plan are made only by Chrysler, and the employee-beneficiaries of the Pension Plan have no power to

revoke the trust and reach its corpus, public policy concerns would not prevent enforcement of the restriction.

*Watkins,* 95 B.R. at 490.[6]

. Similarly, this Court determines that the Ford pension plan was created to provide for the maintenance of the beneficiaries and was effectively secured against their improvidence or incapacity. The plan is funded solely by Ford, the beneficiaries are only entitled to monthly payments upon retirement, and the beneficiaries have no access to or control over the *res.* The *Watkins* analysis fully applies.

Accordingly, based upon the reasons set forth above, IT IS ORDERED that:

1. The Bankruptcy Court's order filed July 21, 1989, is reversed.

2. The debtor's interest in the Ford Motor Company Pension Plan is excluded under 11 U.S.C. § 541(c)(2) and is not property of the bankruptcy estate under 11 U.S.C. § 541(a)(1).

3. This Court, having concluded that the pension interest is excluded from the bankruptcy estate, finds the 11 U.S.C. § 522(d)(10)(E) exemption issue is moot.

---

**5.** The plan does provide for certain deductions for Blue Cross–Blue Shield coverage, for federal income tax withholding, to correct overpayment, and in "accordance with provisions of a qualified domestic relations order as defined by the Retirement Equality Act of 1984." Ford Motor Company Pension Plan, Art. V.

**6.** Indeed, the trustee, in her memorandum to the bankruptcy judge, dated April 4, 1989, conceded that "if the interpretation of Michigan spendthrift trusts, as given in *In re Watkins,* controls ... [debtor's] interest in the Ford–UAW pension is a spendthrift trust and therefore not part of the bankruptcy estate."