**In re Rebecca C. BENTON, Debtor.**

**Bankruptcy No. 98–53150–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 30, 1999.

Charles Schneider, Livonia, MI, for plaintiff.

Stuart Snider, Detroit, MI, for trustee.

James Buschmann, Detroit, MI, for Wayne County Plans.

Opinion

STEVEN W. RHODES, Bankruptcy Judge.

The issue before the Court is whether the debtor's interests in the Wayne County Retirement Ordinance Plan and the Wayne County Deferred Compensation Plan are excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). The debtor, Rebecca Benton, and the Wayne County Employees' Retirement System ("WCERS") contend that these plans are excluded from the estate because they are trusts that contain transfer restrictions enforceable under applicable nonbankruptcy law.[1] The trustee contends otherwise. In the alternative, Benton seeks to exempt her interest in these two plans under § 522(d)(10)(E) and the trustee objects to the exemption.

The Court concludes that Benton's interest in the deferred compensation plan is property of the estate because her employer maintains ownership of the deferred compensation until it is paid to her, and therefore the plan is not a trust. Benton's interest in the retirement plan is also property of the estate because its transfer restriction is not enforceable under any nonbankruptcy law.

Further hearings are necessary regarding the claim of exemption.

I. *Property That Is Excluded from the Estate Under 11 U.S.C. § 541(c)(2)*

The filing of a bankruptcy petition creates an estate comprised of all legal or equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1). However, property which falls under § 541(c)(2) is excluded from the estate. That section provides, "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." This "provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992).

The application of § 541(c)(2) raises three issues: (1) whether the debtor's interest is a beneficial interest in a trust; (2) whether there is a restriction on the transfer of that beneficial interest; and (3) whether that restriction is enforceable under applicable nonbankruptcy law. *Id.*

II. *The Wayne County Retirement Ordinance Plan Is a Trust But The Deferred Compensation Plan Is Not a Trust*

A trust is "[a]ny arrangement whereby property is transferred with the intention that it be administered by a trustee for another's benefit." Black's Law Dictionary 1508 (6th ed.1990) (citations omitted). An express trust requires: (1) a clearly defined *res;* (2) an unambiguous trust relationship; and (3) specific affirmative duties undertaken by the trustee. *See In re Johnson*, 691 F.2d 249, 252–53 (6th Cir.1982).

The Wayne County Retirement Ordinance Plan satisfies all three elements of a trust. The funds contributed to the plan define a clear *res.* The plan is administered by the trustees for the benefit of the plan participants, and the trustees have specific affirmative duties set forth in the plan. Accordingly, the Wayne County Retirement Ordinance Plan is a trust.

---

1. The trustee argues that the WCERS does not have standing to be heard on these issues. The Court concludes that the WCERS does have standing, because the outcome of this matter could have a direct and immediate impact on its obligations and liabilities. *See In re Lowenschuss*, 171 F.3d 673 (9th Cir. 1999). A party in interest has standing to challenge whether a debtor's asset is excluded from the estate. *Taunt v. General Retirement Sys. of the City of Detroit (In re Wilcox)*, 225 B.R. 151, 155 (Bankr.E.D.Mich.1998), *aff'd*, No. 98–CV–60511–AA (E.D.Mich. June 2, 1999); *In re Swanson*, 873 F.2d 1121, 1122 (8th Cir.1989).

In contrast, the Deferred Compensation Plan is not a trust. Under 26 U.S.C. § 457, as a condition of tax-deferred status, the funds in such a plan must "remain (until made available to the participant or other beneficiary) solely the property and rights of the employer ..., subject only to the claims of the employer's general creditors." 26 U.S.C. § 457(b)(6).[2]

As required by § 457, Article III of the Deferred Compensation Plan contains the following provisions:

2. **All assets of the Plan,** including all deferred amounts, property and rights purchased with the deferred amounts, and all income attributable to such deferred amounts, property or rights, **shall be the exclusive property of the Employer** and shall be subject to all claims of creditors of the Employer, without protection or preference.

. . . .

6. **The rights of the Participant created by this Plan shall be those of a general creditor of the Employer,** and in an amount equal to fair market value of the Deferred account maintained with respect to the Participant. The Participant acknowledges that his rights are no greater than those of a general creditor of the Employer and that in any suit for an accounting, to impose a constructive trust, or to recover any sum under this Plan, the Participant's rights are limited to those of a general creditor of the Employer. The Employer acknowledges that the Plan Administrator is the agent of the Employer.

7. *Ownership of Deferred Compensation Assets:* **Ownership of any title to all assets of the Wayne County Deferred Compensation Plan shall be vested in Wayne County** until such time as a Participant is entitled to receive benefits under the Plan; no Participant shall have any legal or equitable interest in any asset or assets of the Plan.

Wayne County Deferred Compensation Plan at 5–6 (emphasis added).

In *Sicherman v. Ohio Public Employee Deferred Compensation Program (In re Leadbetter),* 992 F.2d 1216 (Table), 1993 WL 141068 (6th Cir.1993), the court of appeals held that a debtor's interest in a deferred compensation plan is property of the bankruptcy estate and is not excluded under § 541(c)(2). The bankruptcy court had ordered the turnover of funds held in the Ohio Public Employees Deferred Compensation Plan. *In re Leadbetter,* 111 B.R. 640 (Bankr.N.D.Ohio 1990). The district court affirmed. On appeal, the Sixth Circuit affirmed, expressly adopting the reasoning of the bankruptcy court. *In re Leadbetter,* 946 F.2d 895 (Table), 1991 WL 211232 (6th Cir.1991). The Supreme Court vacated the Sixth Circuit's decision for reconsideration in light of *Patterson v. Shumate. Ohio Pub. Emp. Deferred Comp. Prog. v. Sicherman,* 505 U.S. 1202, 112 S.Ct. 2987, 120 L.Ed.2d 865 (1992).

The WCERS suggests in its brief that the establishment of such a trust was automatic. It argues, "As a consequence, Art. III, § 6 and § 7 of the Plan, which retain ownership of the assets of the Plan to Wayne County and restrict the rights of the Participants to their benefits to those of general creditors of the County, are no longer operative." (WCERS's Brief at 3.) However, Wayne County was required to take the necessary steps to establish a trust in order to comply with § 457(g). There is no indication that it did so or that such a trust was in existence when Benton filed her bankruptcy petition.

---

**2.** Section 457 was amended in 1996 to add § 457(g), which provides:

(1) **In general.**—A plan maintained by an eligible employer described in subsection (e)(1)(A) shall not be treated as an eligible deferred compensation plan unless all assets and income of the plan described in subsection (b)(6) are held in trust for the exclusive benefit of participants and their beneficiaries.

26 U.S.C. § 457(g).

Plans already in existence at the time of the 1996 amendment were given until January 1, 1999, to establish the required trust. *See* Pub.L. 104–188, § 1448(c)(2).

On remand, the Sixth Circuit again affirmed. 992 F.2d 1216, 1993 WL 141068. The court first concluded that the funds held in a public deferred compensation plan were property of the estate. The plan proponents had argued that because the funds remained "solely" the property of the employer pursuant to IRC § 457(b)(6), they are not property of the estate. The court rejected this argument, quoting from *In re Hansen*, 111 B.R. 647 (Bankr.N.D.Ohio 1990). In *Hansen*, the bankruptcy court had examined the same Ohio plan and stated, " 'one can readily surmise that the Debtor or any such depositor has an expectancy of a return of investment at some future date as a result of the very purpose of this type of program.' " *Leadbetter*, 992 F.2d at 1216 (quoting *Hansen*, 111 B.R. at 649). The *Leadbetter* court continued:

> Moreover, under ¶ 3.04 of the Ohio Program's plan document, participants are characterized as general creditors of their employer; and, under § 457(b)(6), the deferred funds are subject to the claims of the employer's general creditors. Thus, participants in the Ohio program have, at a minimum, a contingent interest in the funds.

*Leadbetter*, 992 F.2d at 1216.

■ Likewise in this case, although the funds in the Deferred Compensation Plan remain the property of the employer, plan participants like Benton are characterized as general creditors of the employer, and thus have, at a minimum, a contingent interest in the funds.

In *Leadbetter*, the court of appeals next concluded that § 541(c)(2) was inapplicable because the funds were not held in a trust, as required by that section. The court again noted that whereas IRC § 457 provides that a qualified plan remains property of the employer, subject only to general creditor claims, a trust exists only when one party, the trustee, holds legal title, while another party, the beneficiary, holds an equitable or beneficial title in the corpus. *Leadbetter*, 992 F.2d at 1216. *See*

*also Foil v. Commissioner*, 920 F.2d 1196, 1209 (5th Cir.1990) (Funds in a retirement plan did not qualify under § 457 because the funds belonged to the members as beneficiaries and were not the sole property of the employer.).

■ In light of the specific language of the Wayne County Retirement Ordinance and the decision of the court of appeals in *Leadbetter*, the Court concludes that Benton's interest in the Wayne County Deferred Compensation Plan is not an interest in a trust and is thus not excluded from the bankruptcy estate under § 541(c)(2).

The Court must examine the remaining requirements for exclusion from the estate under § 541(c)(2) only with respect to the Wayne County Retirement Ordinance.

III. *The Transfer Restriction in the Wayne County Retirement Ordinance Is Not Enforceable Under Michigan Spendthrift Law*

■ The Wayne County Retirement Ordinance provides:

> Section 32.01 Assignments Prohibited.
>
> (a) The right of an individual to a pension, to refund of accumulated member contributions or the member account, the employer account, the pension itself, or any other right accrued or accruing to any individual, and the assets of the Retirement System, shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or other process of law ... and shall be unassignable except as otherwise specifically provided by the Retirement Ordinance.

Wayne County Retirement Ordinance, § 32.01 at p. 43. Benton argues that this transfer restriction is enforceable under state spendthrift law.

■ Michigan has long recognized spendthrift trusts. *In re Edgar Estate*, 425 Mich. 364, 368, 389 N.W.2d 696 (1986). A spendthrift trust is:

> one created to provide a fund for the maintenance of the beneficiary and at

the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts.

*Fornell v. Fornell Equip., Inc.,* 390 Mich. 540, 548, 213 N.W.2d 172 (1973). The court went on to note that:

> A person cannot, however, create a true spendthrift for himself. Public policy does not permit a man to place his own assets beyond the reach of his creditors. But a settlor is not precluded from transferring his own property in trust to protect himself against his own improvidence.
>
> "Such a trust is binding on him except insofar as it is still within his power to alien or encumber it with debts[.]"

*Id.* (quoting 54 Am.Jur.Trusts, § 166, p. 135 (1945)).

In *Jacobs v. Shields,* 116 B.R. 134 (D.Minn.1990), the court concluded that a pension plan established by Ford Motor Co. was a valid spendthrift trust under Michigan law. The court relied on the following factors: (1) the plan was funded exclusively by Ford; (2) the funds were held in trust; (3) Ford appointed the trustee; (4) the plan was administered by an administrative board; (5) the debtor would receive monthly payments only upon retirement; (6) there were no provisions for hardship withdrawals, loans, or distribution upon termination of employment; and (7) the plan prohibited alienation of benefits. *Id.* at 138.

Similarly, in *In re Watkins,* 95 B.R. 483 (W.D.Mich.1988), the court found that a Chrysler pension plan was a valid spendthrift trust under Michigan law, where: (1) the contributions to the plan were made exclusively by Chrysler; (2) there was no provision for a hardship distribution; (3) the plan contained an anti-alienation provision; (4) there was no provision for withdrawal of funds upon termination of employment; (5) loans were not permitted; (6) beneficiaries could not withdraw any funds from the plan; and (7) beneficiaries could not elect a lump-sum payment in lieu of monthly payments upon retirement.

In *Jacobs* and *Watkins,* nothing suggested that the debtors had any control over their pension plans. On the other hand, Benton can exercise substantial ongoing control over her retirement plan, through her contribution election rights, her termination distribution rights, and her right to withdraw funds through loans.

Regarding the contribution election rights, although membership in the Wayne County Retirement Ordinance Plan is mandatory (§ 3.01(a) at p. 4), an employee is not required to contribute to the plan and may elect one of four different plans under the Retirement Ordinance.

Benton elected the Defined Contribution Plan 4, which does require her contribution. Under this plan, an employee contributes a percentage of the employee's compensation, ranging from 1% to 2.5% per year, not to exceed $1,500 per year. Wayne County Retirement Ordinance § 14.09 at p. 22. The County's matching contribution is either $4 or $5 for each $1 contributed by the employee, depending on the employee's coverage group. *Id.* at § 14.10 at p. 23. For Benton, the County's matching contribution is $4 for each $1 that she contributes. Thus, Benton contributes 20% and the County contributes 80%. Because the County's contribution is tied to Benton's contribution, which she can determine (within a range), Benton effectively controls the County's contribution.

Regarding termination rights, although the Retirement Ordinance provides for monthly payments upon retirement, death or disability, the plan also provides for the full refund of both employee contributions *and vested County contributions* if employment is terminated. Section 3.03 provides that upon termination of employ-

ment, membership in the Retirement System ceases. Upon termination of membership, §§ 28.02 and 28.03 provide for the refund of accumulated employee contributions and an individual's vested employer account. Vesting occurs after only two or three years of service.[3]

Benton's vested balance in her plan as of June 30, 1998, was $33,367.12. If her employment had terminated at that time, she would have been entitled to a refund of that amount.

In *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121 (8th Cir.1989), the court, applying Minnesota spendthrift law, stated:

> [M]embers are entitled to a refund of their contributions to the Fund upon termination of employment. While this is a very limited right of control over the Funds, **the ability of the beneficiary to control trust assets in any way is inimical to the policies underlying the spendthrift trust.**

*Id.* at 1124 (emphasis added).

Finally, regarding loan rights, although the Wayne County Retirement Ordinance Plan contains a transfer restriction, the plan does permit member loans. Section 32.01 provides in part:

> (b) The Retirement System may make member loans to members covered by a defined contribution program of benefits. Loans shall be made pursuant to a loan program adopted by the Board of Trustees. The loan program shall limit loans to those which will not be considered a distribution to the member under applicable provisions of the Internal Revenue Code.

The parties submitted no documentation describing the loan program. However, the WCERS stated in its brief that loans are limited to $50,000 or 50% of the participant's vested account value, whichever is less. A participant may have no more than two loans outstanding at once and will only be granted one loan in any sixth month period. A loan must be repaid over a maximum period of five years, unless for the purchase of a home, in which case the repayment period is extended to fifteen years. (WCERS's Brief at 4.)

Thus, from the funds in Benton's account ($33,367.12), she could presently borrow 50%, which is over $16,500. That amount exceeds her contribution, which is 20% of the funds in her account. She thus could borrow not only what she has contributed, but also part of the County's contributions.[4]

■ In any event, permitting loans from the plan is wholly inconsistent with the intent of a spendthrift trust, which is "to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity." *Fornell*, 390 Mich. at 548, 213 N.W.2d 172.

In *In re Witte*, 92 B.R. 218 (Bankr. W.D.Mich.1988), the court noted that a transfer restriction in a retirement plan was undercut by a provision permitting participant loans. The court held that therefore the plan was not a valid spendthrift trust under Michigan law. *Id.* at 221.

Thus, the factors suggesting that the Wayne County Retirement Ordinance Plan is not a valid spendthrift trust are: (1) employees elect one of four plans; (2) the plan that Benton elected is funded in part by her and in part by her employer; (3)

---

**3.** Section 14.04 of the Wayne County Ordinance Retirement Plan provides:

The service requirement for vested termination of membership is 2 or more years of credited service for the executive coverage group. The service requirement for vested termination of membership is 3 years of credited service for all other coverage groups. The service requirement is waived

if the County Executive provides a written certification that the termination is involuntary.

**4.** Benton's account statement indicates that she has actually taken out two loans and that as of June 30, 1998, her remaining loan balance was $1,734.57. (Benton's Brief, Ex. B.)

Benton can elect, within limits, how much to fund and thus how much her employer funds; (4) Benton's plan provides for full distribution to her upon her termination after a relatively brief period of service; (5) her plan permits loans by members, in an amount that can exceed the employee's contributions into the plan; and (6) Benton has removed assets from the plan by taking out loans.

In addition, to the extent Benton makes contributions to the Retirement Ordinance Plan, the plan is a self-settled trust. " 'There is substantial authority for the proposition that anti-alienation provisions in employee benefit plans are unenforceable under state law to the extent that the plan is funded by voluntary employee contributions, on the theory that the plan is in essence self-settled.' " *In re Dunn,* 215 B.R. 121, 128 (Bankr.E.D.Mich.1997) (quoting *In re Idalski,* 123 B.R. 222, 233 (Bankr.E.D.Mich.1991) (collecting cases)).

■ Although the Retirement Ordinance Plan is not entirely self-settled, Benton's control over the plan precludes the Court from finding that it is a valid spendthrift trust. "The primary consideration in determining whether a valid spendthrift trust exists is the beneficiary's degree of control over the trust." Restatement 2d Trusts § 153(2) (1959).

Benton argues that her plan is more like the plan in *Wyrzykowski v. City of Hamtramck,* 324 Mich. 731, 37 N.W.2d 686 (1949), where the court found a valid spendthrift trust. In *Wyrzykowski,* the court held that pension benefits provided by the pension plan of the City of Hamtramck were not subject to the garnishment claims of its employee's creditors. The court stated that the pension plan was in "the nature of a reward and noncontractual and nonassignable." *Id.* at 736, 37 N.W.2d at 688. The court found that the funds in the pension plan were not subject to garnishment by the employee's creditors because,

"the rule of public policy which subjects a debtor's property to the payment of

his debts, does not subject the property of a donor to the debts of his beneficiary, and does not give the creditor a right to complain that, in the exercise of his absolute right to disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach."

*Id.* at 735, 37 N.W.2d at 688 (quoting *Broadway Nat'l Bank v. Adams,* 133 Mass. 170, 174 (1882)).

In a supplement to the *Dunn* opinion, *In re Dunn,* 215 B.R. 848 (Bankr.E.D.Mich. 1997), this Court distinguished the facts of *Dunn* from *Wyrzykowski.* The Court summarized the *Wyrzykowski* holding as follows:

In essence, the Michigan Supreme Court found that the pension was a spendthrift trust, and furthermore, that it was not self settled. According to the court, "This fund was derived through taxation, collection of fines, emoluments, and five per cent. deductions from the pay of the police officer under section 11 of the city charter."

*Dunn,* 215 B.R. at 849 (quoting *Wyrzykowski,* 324 Mich. at 733, 37 N.W.2d 686).

In distinguishing *Dunn* from *Wyrzykowski,* the Court noted that in *Dunn,* the plan was a fully self-settled trust, while in *Wyrzykowski,* the plan was not funded exclusively by the employee. Although the pension plan in *Wyrzykowski* was funded in part by employee contributions (5% deductions from the employee's pay), the contributions were mandatory, not voluntary. As such, "the employees had no control over the plan or its funding." *Dunn,* 215 B.R. at 850. The Court also noted that the public policy justification in *Wyrzykowski* was not present in *Dunn.* In *Wyrzykowski,* the court described this public policy as follows:

That the pension should be exempt from garnishment is of great importance to the city of Hamtramck in making an assured reward for the benefit of deserving pensioners in advanced age inca-

pacitated from performing their duties. The city has undoubted right to provide against the incapacitated officer being in destitution and to that end that he should have a pension reasonably commensurate with his properly anticipated needs and free from garnishment. The existence of the pension fund is a well recognized incentive to faithful discharge of duties during the period of active service.

*Wyrzykowski,* 324 Mich. at 736–37, 37 N.W.2d 686.

Benton argues that the public policy concerns expressed in *Wyrzykowski* are present in this case. However, in light of Benton's control over the funds in the plan, public policy considerations alone cannot support a finding that the plan is a valid spendthrift trust. Further, it does not appear that the pension plan at issue in *Wyrzykowski* permitted either voluntary contributions by the employees, loans to the employees, or full distributions to employees upon termination.

Accordingly, the Court concludes that the Wayne County Retirement Ordinance Plan is not a valid spendthrift trust under Michigan law.

IV. *The Transfer Restriction in the Wayne County Retirement Ordinance Is Not Enforceable Under Any Other Applicable Nonbankruptcy Law*

■ Benton next argues that the Supreme Court's expansive reading of "applicable nonbankruptcy law" in *Patterson v. Shumate* requires this Court to consider ordinances enacted by a county government. Benton argues that the transfer restriction in the plan is enforceable through the provisions of the plan itself. In *Patterson,* the Court held that the term "applicable nonbankruptcy law" is not limited to state law, but includes federal law, such as ERISA. *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519.

Benton argues that the transfer restriction in the Retirement Ordinance is en-forceable through the state scheme of statutes which begins with the County Civil Service Act. M.C.L.A. § 38.401, et seq. Benton also refers to various provisions in the Retirement Ordinance, such as § 27.03, under which the Retirement Commission is charged with enforcing plan provisions. Further, Benton cites *Raven v. Board of Comm'rs of Wayne County,* 52 Mich.App. 196, 217 N.W.2d 116 (1974), for the proposition that plan participants may sue in state court to enforce plan provisions.

The WCERS also refers to various provisions of the Civil Service and Retirement Act which contain transfer restrictions, including M.C.L.A. § 38.40(1) (governing state employees), M.C.L.A. § 38.1346(1) (governing public school employees), and M.C.L.A. § 38.1057(1) (governing legislators). The WCERS contends that just as Michigan law protects the retirement benefits of state employees, counties should be permitted to include the same protections in their employees' retirement plans.

The WCERS also relies on M.C.L.A. § 46.12(a), which permits a county to establish retirement plans for county employees. The WCERS acknowledges that § 46.12(a) does not directly address transfer restrictions. However, § 46.12(a)(31) does provide that plans are subject to an eligible domestic relations order. The WCERS contends that because the Eligible Domestic Relations Order Act was enacted solely to overcome anti-alienation clauses in governmental plans, the Michigan legislature must have contemplated that county retirement systems could validly enact anti-alienation provisions which would otherwise be enforceable.

In *Patterson,* after the Supreme Court determined that "applicable nonbankruptcy law" includes the Employee Retirement Income Security Act of 1974 ("ERISA"), it then had to determine whether the anti-alienation provision in an ERISA-qualified plan was enforceable pursuant to ERISA law. The Court noted that

Section 206(d)(1) of ERISA, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust.  . . .

Moreover, these transfer restrictions are "enforceable," · as required by § 541(c)(2). Plan trustees or fiduciaries are required under ERISA to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan. §§ 1132(a)(3) and (5). Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any exception to the broad statutory bar. See *Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

*Patterson,* 504 U.S. at 759–60, 112 S.Ct. at 2247 (footnote omitted).

Unlike ERISA, there is no independent legal requirement that the Wayne County Retirement Ordinance Plan contain a transfer restriction. Moreover, there is no statute or other law which would enforce such a restriction.

Benton relies on *Raven v. Bd. of Comm'rs* for the proposition that "a plan participant may also sue in circuit court the commissioner for failing to observe the terms of the ordinance." (Benton's Brief at 6.) In *Raven,* the court found that the county medical examiner was subject to the mandatory retirement age, despite the contention that she was exempt as an appointed official. The court considered relevant provisions of the Civil Service Act and the Retirement Ordinance Enabling Act. *Raven,* 52 Mich.App. 196, 217 N.W.2d 116.

Benton's reliance on *Raven* is misplaced. If the Civil Service Act, or any other relevant act, contained a provision requiring a transfer restriction in retirement plans and provided for enforcement, it would likely be enforceable. However, no relevant law requires such a restriction. That Wayne County opted to include such a restriction in its plan does not, by itself, make it enforceable.

In *In re Wilcox,* the court analyzed a similar plan established by the City of Detroit. In a footnote, the court disposed of an argument similar to that advanced by Benton and the WCERS here:

Defendants also raise a cursory argument that, because the Plan was established pursuant to the City Charter; because the Charter has always provided for a restriction on the transfer of a beneficial interest in the Plan; and because the state statute governing municipalities other than cities electing to be Home Rule jurisdictions (Mich.Comp. Laws Ann. § 38.40 (West 1997)), also contains an anti-alienation provision, the restriction at issue is enforceable. This Court is not persuaded by Defendants' unsupported argument. Defendants provide no authority to support their claim that simply because City Charters or their State (or some other governmental) counterpart provide for a restriction on alienation, the restriction is per se enforceable, and this Court is not inclined to adopt such reasoning. Furthermore, this court could not find relevant authority to support Defendants' argument. Rather, this Court's search found the case law regarding Defendants' claim distinguishable and not relevant to the facts at hand. *See In re Dunn* (Supplement to Opinion), 215 B.R. 848 (Bankr.E.D.Mich.1997) (citing *Wyrzykowski v. City of Hamtramck,* 324 Mich. 731, 37 N.W.2d 686 (1949)).

*Wilcox,* 225 B.R. at 158, n. 6.

Likewise, this Court has been unable to find any case law supporting the position taken by Benton and the WCERS. On the

contrary, the case law indicates that for § 541(c)(2) to apply, it must be demonstrated that the transfer restriction is enforceable under a specific nonbankruptcy law. *See In re Yuhas,* 104 F.3d 612 (3rd Cir.1997) (The debtor's interest in an IRA was excluded from the estate due to a transfer restriction enforceable under a New Jersey statute.); *In re Meehan,* 102 F.3d 1209 (11th Cir.1997) (A transfer restriction was enforceable under a Georgia statute.); *In re Hipple,* 225 B.R. 808 (Bankr.N.D.Ga.1996) (same); *In re Johnson,* 191 B.R. 75 (Bankr.M.D.Pa.1996) (A transfer restriction was enforceable under a Pennsylvania statute.); *In re Silviera,* 186 B.R. 168 (Bankr.D.Mass.1995) (A transfer restriction was enforceable under a Massachusetts statute.).

In *Lowenschuss,* 171 F.3d 673, the court found that although the debtor relied on an applicable state statute exempting funds in his pension plan from attachment or execution, the plan was not excluded under § 541(c)(2) because the statute did not provide a mechanism for enforcing the transfer restriction. The court stated:

> Debtor's interest in the Pension Plan cannot be excluded under section 8124(b) of the Pennsylvania Consolidated Statutes because that exemption statute does not allow Debtor to enforce the Pension Plan's transfer restriction as *Patterson* requires. In *Patterson,* the Supreme Court held that the transfer restriction required in every ERISA plan was enforceable because ERISA-plan participants or beneficiaries could enforce that transfer restriction through ERISA's civil remedies. *See* 504 U.S. at 760, 112 S.Ct. 2242 (*citing* 29 U.S.C. § 1132(a)(3), (5)). In contrast, section 8124(b) does not provide a mechanism by which the Debtor can enforce the transfer restriction contained in the Pension Plan. . . .

> . . . .

> Only if the transfer restriction contained in the trust instrument is enforceable under applicable nonbankruptcy law can the debtor's beneficial interest in that trust be excluded from the bankruptcy estate.

*Lowenschuss,* 171 F.3d at 682, 684 (footnote omitted).

Accordingly, Benton's interest in the Retirement Ordinance Plan is not excluded from property of the estate under § 541(c)(2).

## V. *Conclusion*

 Benton's interests in the Wayne County Deferred Compensation Plan and the Wayne County Retirement Ordinance Plan are property of the bankruptcy estate. Further hearings are necessary on the debtor's exemption of her interest in these plans under § 522(d)(10)(E).[5]

---

**5.** In objecting to the debtor's exemption of these two plans, the trustee argued that the plans are not qualified under the provisions of the IRC specified in § 522(d)(10)(E)(iii) and thus cannot be exempted. The Court rejects this argument for the reasons stated in *In re Hall,* 151 B.R. 412, 422 (Bankr.W.D.Mich. 1993) ("Because the exception to § 522(d)(10)(E) is in the conjunctive, all three prongs must be satisfied for the Pension Plan to not be properly exemptible.").

There are however two other issues relating to Benton's exemption that require further briefing by the parties, both involving the proper statutory construction of § 522(d)(10)(E). The first is whether the Deferred Compensation Plan is "a stock bonus, pension, profitsharing, annuity, or other similar plan." The second is whether Benton's interest in the Retirement Ordinance Plan is a right to receive "a payment . . . on account of illness, disability, death, age, or length of service." If the Court then rules in the debtor's favor on either or both of these issues, an evidentiary hearing will be necessary to determine the extent that Benton's interest in these plans is "reasonably necessary" for her support and thus the extent of her exemption under § 522(d)(10)(E).